# United States District Court
**EASTERN DISTRICT OF TEXAS SHERMAN DIVISION**

| | | |
|---|---|---|
| BRYAN JALLO | § | |
| | § | |
| V. | § | CASE NO. 4:14-CV-449 |
| | § | Judge Mazzant |
| RESURGENT CAPITAL SERVICES, LP | § | |
| and LVNV FUNDING, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Resurgent Capital Services, LP ("Resurgent") and LVNV Funding, LLC's ("LVNV") Motion to Compel Arbitration and Stay or Dismiss this Action (Dkt. #58). After considering the motion, the responses, and the relevant pleadings, the Court finds the motion should be denied.

### BACKGROUND

Plaintiff Bryan Jallo initiated this action alleging that Defendants violated the Fair Debt Collection Practices Act ("FDCPA") and Texas Debt Collection Act ("TDCA") by attempting to collect a debt on his Best Buy branded credit card that, according to Plaintiff, included improper interest. On March 10, 2001, Plaintiff opened up a Best Buy branded credit card account by signing a contract (the "Account Application") (Dkt. #58, Saxena Decl., Ex. 1 at p. 2).

The Account Application reads, in part: "By a) signing, using, or permitting others to use this Card . . . you agree to the terms and conditions of the Cardholder Agreement and Disclosure Statement, (which includes an arbitration provision), which shall be sent to you with the credit card" (Dkt. #58, Saxena Decl., Ex. 1 at p. 2). The Cardholder Agreement and Disclosure Statement (the "Original Cardholder Agreement") is a separate document from the Account Application, and possession and passage of this document is at issue in the current matter.

1

LVNV claims to have acquired Plaintiff's account on July 14, 2009 (Dkt. #51, Ex. Mem. at p. 1). On August 23, 2013, Resurgent, as servicer of Plaintiff's account owned by LVNV, sent a letter to the Better Business Bureau of Upstate South Carolina in which it states that Resurgent responded to Plaintiff's June 19, 2013, request for verification of debt on July 9, 2013, "advising that there was insufficient information to resolve Mr. Jallo's dispute and *enclosed the credit application*" (Dkt. #55, Sealed Ex. C at p. 1) (emphasis added).

On July 8, 2014, Plaintiff filed a class action claim ("Complaint") alleging Defendants violated eight statutes related to the FDCPA, 15 U.S.C. § 1692 et seq., and the TDCA Tex. Fin. Code § 392.001 et seq. (Dkt. #1 at p. 11-17). On August 15, 2014, Defendants filed a Joint Answer to the Complaint that included several defenses but notably did not include any mention of arbitration as an affirmative defense (Dkt. #12). On September 5, 2014, Defendants filed an Amended Answer to the Complaint, again failing to mention arbitration as a defense to the claims (Dkt. #15). On October 9, 2014, Defendants participated in a Report of Rule 26(f) Planning Meeting, briefly making a statement of relevant facts and a statement of defenses without mention of arbitration (Dkt. #17). On December 15, 2014, Defendants filed a Motion for Judgment on the Pleadings to Dismiss Plaintiff's Complaint, asking the Court to dismiss all of Plaintiff's claims with prejudice (Dkt. #22). On December 17, 2014, Defendants filed a Motion to Stay Discovery Pending Resolution of the Defendants' Motion for Judgment on the Pleadings to Dismiss Plaintiff's Complaint (Dkt. #25). On January 5, 2015, Defendants filed a brief supporting their motion to dismiss (Dkt. #28), and, on January 9, 2015, a brief supporting their motion to stay discovery (Dkt. #30). Defendants did not discuss arbitration at any point in any of these filings. On January 22, 2015, the Court denied both the motion to stay and the motion to dismiss (Dkts. #32, 33).

Defendants contend that on April 27, 2015, a third-party's counsel ("Capital One") disclosed, and claimed to be able to authenticate, what Defendants argue is the Original Cardholder Agreement (Dkt. #59 at p. 3). On that same day, Defendants provided the document (the "Presented Agreement") to Plaintiff's counsel as supplemental production (Dkt. #59 at p. 3). Defendants assert that they did not produce the Original Cardholder Agreement early in the litigation because it was not among the records they acquired when they purchased Plaintiff's account (Dkt. #59 at p. 3). Defendants argue that all parties in the litigation have had similar difficulties obtaining the Original Cardholder Agreement, subpoenaing multiple parties without success (Dkt. #51, Ex. Mem. at p. 2).[1] The Presented Agreement contains an arbitration clause that states: "Any claim, dispute, or controversy . . . including initial claims, counter-claims, cross-claims and third party claims, arising from or relating to this Agreement . . . shall be resolved . . . by binding arbitration pursuant to this arbitration provision . . ." (Dkt. #58, Mem. in Supp., Ex. B at p. 1).

The next day, April 28, 2015, Defendants filed a Motion for Leave to File an Amended Answer in part in order to include the following as an affirmative defense: "Plaintiff's claims are subject to binding arbitration. Defendants intend to move to compel arbitration of this dispute." (Dkt. #51 at p. 2). On May 20, 2015, Defendants filed a Motion to Compel Arbitration and Stay or Dismiss this Action, asking the Court to compel arbitration pursuant to the arbitration clause in the Presented Agreement (Dkt. #58 at p. 2).

On May 29, 2015, Plaintiff filed a Response to Defendants' motion to compel arbitration (Dkt. #60). In the response, Plaintiff argues that the Court should not compel arbitration

---

[1] This order delineates between the Presented Agreement and the Original Cardholder Agreement. Plaintiff questions whether the Presented Agreement is actually the Original Cardholder Agreement referenced in the Account Application and asserts that, in any case, Defendants have failed to authenticate the document (Dkt. #60 at p. 7).

because: (1) Defendants waived their right to arbitrate; (2) the arbitration clause was not authenticated; and (3) assuming *arguendo* that Defendants had properly authenticated the agreement, the arbitration clause was unilateral in nature, thus rendering it unenforceable (Dkt. #60 at p. 1). On June 8, 2015, Defendants filed their Reply (Dkt. #63).

## LEGAL STANDARD

When considering a motion to compel arbitration, the Court must address two questions. *Graves v. BP Am., Inc.*, 568 F.3d 221, 222 (5th Cir. 2009). "First, whether there is a valid agreement to arbitrate, and second, whether the dispute in question falls within the scope of the arbitration agreement." *Id*. (citing *Fleetwood Enters. Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)). In regard to the first question of contract validity, the Court should apply "ordinary state-law principles that govern the formation of contracts." *Id*. (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). The second question of scope is answered "by applying the 'federal substantive law of arbitrability . . . .' " *Id*. (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

## ANALYSIS

Defendants argue that the Court should compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (Dkt. #58, Mem. in Supp. at p. 7). Defendants contend that Plaintiff's claims are subject to a mandatory arbitration clause in the Presented Agreement, and point out that Plaintiff consented to the terms and conditions, including the arbitration clause, when he signed the Account Application and used the issued credit card (Dkt. #58, Mem. in Supp. at pp. 8-9). Second, Defendants argue that there are not any external legal constraints that would foreclose arbitration of Plaintiff's claims.

Plaintiff, however, contends that the Court should not compel arbitration because Defendants have failed to authenticate the Presented Agreement, and therefore, have not properly introduced a valid agreement to arbitrate (Dkt. #60 at p. 7). Plaintiff further holds that the "unilateral modification clause" in the Presented Agreement renders the arbitration provision illusory and unenforceable (Dkt. #60 at p. 11). Finally, Plaintiff states that even if the Court finds the arbitration provision enforceable and properly introduced, Defendants have waived any right they may have had to arbitrate the matter (Dkt. #60 at p. 1).

The Court finds that Defendants have waived their right to compel arbitration. Because the Court finds an independent basis for denying the motion to compel arbitration and stay or dismiss this action, the Court need not address Plaintiff's additional arguments.

The right to arbitrate a dispute is subject to waiver. *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907-08 (5th Cir. 2009) (citing *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).[2] Though the courts indicate a presumption against finding waiver, "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Miller*, 781 F.2d at 497. Therefore, there are two questions at issue: (1) have Defendants substantially invoked the judicial process, and if so, (2) has the Plaintiff been prejudiced thereby? *See, e.g.*, *Nicholas*, 565 F.3d at 907-08.

As a first issue, Defendants argue that they cannot have waived arbitration because they did not have the Original Cardholder Agreement or an authenticated copy of the agreement until Capital One produced the Presented Agreement in April 2015 (Dkt. #63 at p. 1). Plaintiff posits that, regardless of actual possession of the Original Cardholder Agreement or an authenticated

---

[2] Plaintiff continually cites both Nevada and Ninth Circuit law, reasoning that the Presented Agreement is governed under Federal Law and the laws of the state of Nevada (Dkt. #60). Determining waiver of the right to arbitrate does not, however, involve analysis or interpretation of contract provisions. In fact, this analysis does not consider the substance of the Presented Agreement or the Original Cardholder Agreement in any way. Rather, whether a party has waived its right to arbitrate is a procedural question governed by forum law.

5

copy, Defendants had knowledge of an existing right to compel arbitration since August 2013 at the latest, evidenced by letters sent to the Better Business Bureau of Upstate South Carolina (Dkt. #60 at p. 2). In these documents, Defendants claim to be in possession of Plaintiff's Account Application, which reads, in part, ". . . you agree to the terms and condition of the Cardholder Agreement and Disclosure Statement, which includes an arbitration provision . . . ." Plaintiff questions Defendants' suggestion that they only recently obtained the Original Cardholder Agreement, but argues that what matters is whether Defendants had knowledge of an existing right to compel arbitration (Dkt. #60 at p. 3).

In *Williams v. Cigna Financial Advisors, Inc.*, the Fifth Circuit found no waiver where a party filed a motion to stay the case pending arbitration as soon as it discovered that the dispute was arbitrable even though the party had removed the action to federal court, filed an answer, asserted a counter claim, exchanged discovery, and filed a motion to dismiss. 56 F.3d 656, 661 (5th Cir. 1995). In *Huntington Bank v. Merrill Lynch*, however, the Fifth Circuit found waiver of the right to arbitrate where a party was "at least on constructive notice as to the existence of the arbitration agreements." 77 F. 3d 479 (5th Cir. 1996) (per curiam). They acknowledged that a court may consider a party's motivations for failing to request arbitration at the earliest possible time, but were unconvinced by that particular party's argument that it was uncertain as to the enforceability or existence of arbitration agreements. *Id*. at *4.

The Court is likewise unconvinced by Defendants' arguments. At the very least, the Court finds that Defendants should have known that it had a right to arbitrate as of August 2013. Defendants may not have had access to the details of the Original Cardholder Agreement, but evidence indicates they had possession of the Account Application, which recites the existence of an arbitration provision, nearly a year before Plaintiff filed suit. Defendants excuse this delay

6

by claiming that they required an authenticated copy of the Original Cardholder Agreement to arbitrate, and further, that they had difficulty obtaining the Agreement. The Court, however, finds that Defendants substantially invoked the judicial process without demonstrating consideration as to this pending arbitration issue. Defendants could have mentioned early in litigation an intention to arbitrate when the Original Cardholder Agreement was found in discovery, they could have requested limited discovery as to this particular issue, or they might have requested a stay until the question of arbitration was settled. Instead, Defendants engaged in numerous actions that demonstrated a disregard for the provision to arbitrate in favor of resolution through litigation.

The Fifth Circuit has stated that to invoke the judicial process a party must "engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration." *In re Mirant Corp.*, 613 F.3d 584, 589 (5th Cir. 2010) (citing *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). A party likely waives their right to arbitration "by seeking a decision on the merits of the claim before seeking to arbitrate." *Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009); *see also, Mirant*, 613 F.3d at 589. The Fifth Circuit stresses that a party seeking to litigate matters extensively favors a finding of waiver of arbitration. *See Nicholas*, 565 F.3d at 909.

Here, Defendants failed to mention arbitration anywhere in their documents to the Court until April 29, 2015, almost ten months after the original Complaint was filed. In the time between the initiation of the suit and Defendants mention of arbitration, Defendants filed: (1) a Joint Answer and Affirmative Defenses (Dkt. #12); (2) an Amended Answer (Dkt. #15); (3) a Motion for Judgment on the Pleadings (Dkt. #22); (4) a Motion to Stay Discovery Pending Resolution of Defendants' Motion for Judgment on the Pleadings (Dkt. #25); (5) a Reply in

support of their Motion for Judgment on the Pleadings (Dkt. #28); (6) a Reply in support of their Motion to Stay Discovery; (7) a Motion for Extension of Time to File Response to Motion to Compel (Dkt. #36); (8) a Response to Motion to Compel (Dkt. #37); (9) a Second Motion for Extension of Time to File Response to Motion to Compel (Dkt. #39); and (10) a Third Motion for Extension of Time to File Response to Motion to Enforce (Dkt. #42).

In addition to recognizing the sheer number of Defendants' filings, the Court specifically notes Defendants' Motion for Judgment on the Pleadings and Motion to Stay Discovery Pending Resolution of the Motion for Judgment. In the Motion for Judgment, the Defendants asked the Court to dismiss Plaintiff's claims with prejudice, and, in the Motion to Stay, the Defendants asked the Court to bring a halt to discovery until the motion for judgment was settled. In *Mirant*, the Fifth Circuit found that a request for dismissal with prejudice "reinforce[d] [their] conclusion that [defendant] sought a decision on the merits in [the] case." 613 F.3d at 589. Here too, the filings reinforce the conclusion that Defendants sought a decision on the merits of the case.

In *Lemus v. CMH Homes, Inc.*, the Fifth Circuit found no waiver, though the case was pending for more than a year, when defendants engaged in discovery for the limited purpose of building a case to compel arbitration. 798 F.Supp.2d 853, 860 (5th Cir. 2011). Here, Defendants did not request a stay in order to complete discovery on the Original Cardholder Agreement or to acquire an authenticated copy of such in order to compel arbitration. Instead, Defendants sought to halt discovery and dispense with the claims entirely before building a case to compel arbitration. Taking all these factors into consideration, the Court finds Defendants "substantially invoked the judicial process" through their actions.

In addition to invocation of the judicial process, a party opposing arbitration for reason of waiver must demonstrate prejudice, referring in this context to delay, expense, and damage to a

party's legal position. *Nicholas*, 565 F.3d at 910. Plaintiff argues that Defendants caused prejudice by acting inconsistently with any right they may have had to arbitrate (Dkt. #60 at p. 4). Plaintiff holds that Defendants used discovery not available in arbitration (threatening a potential subpoena, unavailable in arbitration, against Capital One), that they substantially litigated the case on the merits, particularly through Defendants' Motion for Judgment on the Pleadings, and that, if the Court allows arbitration now, issues already litigated could be forced to be decided a second time before the arbitrator (Dkt. #60 at pp. 5-6). Defendants argue that discovery by subpoena is available in arbitration, that the assertion that they substantially litigated seeking a decision on the merits fails, and that arbitration will not duplicate efforts (Dkt. #63 at pp. 2-3).

The Court finds that Defendants caused prejudice to Plaintiff. "Where a party fails to demand arbitration . . . and, in the meantime engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." *Price v. Drexel Burnham Lahmbert, Inc.,* 791 F.3d 1156, 1161 (5th Cir. 1985). Defendants, at the very least, substantially litigated this matter, filing much more than a perfunctory motion to dismiss and attempting to halt discovery until a decision was rendered on the merits of the case. Though Defendants argue that they filed this motion as soon as they were able, the Court finds that there was significant delay from the time Defendant's should have been aware of the arbitration provision until it made a demand for arbitration.

The Fifth Circuit has stressed that "[o]ne of the primary goals of arbitration is to avoid the expense of litigation." *Nicholas*, 565 F.3d at 907. Here, Plaintiff has been prejudiced by Defendants' failure to invoke arbitration at the beginning of proceedings. Though Defendants

argue that arbitration would not duplicate efforts, the Court finds that, at the very least, Plaintiff has been forced to incur normal expenses in conducting a litigation proceeding which, if arbitration were ordered, would be necessarily duplicative of an arbitration as another process working toward resolution of Plaintiff's claims.[3]

Defendants argue there is no prejudice as to Plaintiff's legal position, noting that Defendants did not actually issue a subpoena to Capital One and that, in any case, subpoenas are available in arbitration as well as litigation. Defendants misstate Plaintiff's actual contention. Plaintiff argues that Defendants *threatened* Capital One in a successful effort to obtain information, and that the threat would not have been credible in arbitration because Defendants would not have been able to issue a subpoena. Defendants point out that an arbitrator may issue a subpoena, but the Court recognizes that this right to issue a subpoena is discretionary rather than mandatory. Therefore, Plaintiff's legal position was, to at least a small degree, damaged by Defendant's ability to convincingly threaten a subpoena.

Considering the delay, the expense, and the damage to his legal position, the Court finds that Defendants prejudiced Plaintiff by not seeking arbitration at the beginning of litigation. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case" rather than a bright-line rule. *Mirant*, 613 F.3d at 589 (quoting *Tenneco Resins, Inc, v. Davy Int'l, AG*, 770 F.2d 416, 420 (5th Cir. 1985). According to the facts of this case, the Court finds that Defendants substantially invoked the judicial process to the prejudice of Plaintiff, waiving whatever right they may have had to compel arbitration.

## CONCLUSION

It is therefore **ORDERED** that Defendants LVNV and Resurgent's Motion to Compel Arbitration and Stay or Dismiss this Action (Dkt. #58) is hereby **DENIED**.

---

[3] Plaintiff cites over $46,000 in attorneys' fees as of May 12, 2015 (Dkt. #60 at p. 6).

**SIGNED this 7th day of August, 2015.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE